1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM STEPHENSON,                        No.  2:20-cv-2227 DJC SCR P

12                 Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   COUNTY OF PLACER,

15                 Defendant.

16

17        Plaintiff, a former jail detainee[1] proceeding pro se, filed this civil rights action pursuant to

18   42 U.S.C. § 1983.  (ECF Nos. 1, 35.)  Presently before the court are the parties' cross motions for

19   summary judgment.  (ECF Nos. 52, 54.)  For the reasons set forth below, the undersigned

20   recommends that defendant's motion be granted, and plaintiff's motion be denied.

21                                   **BACKGROUND**

22   **I.    Relevant Procedural History**

23        Plaintiff proceeds on the first amended complaint filed on March 31, 2023, which asserts a

24   single claim for relief under the Due Process Clause of the Fourteenth Amendment.[2]

25   _____

26   [1]  Plaintiff filed his complaint as an alleged civil detainee.  However, defendants allege that
     plaintiff was arrested on a "fresh" criminal charge and was therefore at the times relevant to this
27   action a criminal detainee while confined in the South Placer County Jail.

28   [2]  The initial complaint was filed November 6, 2020.  (ECF No. 1.)

                                            1

(ECF No. 35.)  The County of Placer is the sole defendant in this case.  Defendant filed its answer on June 9, 2023.  (ECF No. 40.)

Defendant filed its motion for summary judgment on January 29, 2024 (ECF No. 52), and plaintiff filed his motion for summary judgment on February 1, 2024 (ECF No. 54).  Both motions are fully briefed.

**II.     Allegations in the First Amended Complaint**

Plaintiff, an alleged civil detainee currently held at Coalinga State Hospital, names Placer County (the "County") as the sole defendant in this action.  (See ECF No. 35 at 2-3.)  During the period in question, plaintiff, having previously been committed as a sexually violent predator ("SVP") under California Welfare & Institutions Code section 6604, was awaiting a revocation hearing for having allegedly violated his terms of conditional release.  (See id. at 3.)  Plaintiff alleges that because he was committed as an SVP, he was to be considered a civil detainee.  (Id.)

Plaintiff contends that from May 2017 to April 2018, while in the custody of the Placer County Sheriff's Department as an alleged civil detainee, he received continuous treatment under the Sexually Violent Predator Act ("SVPA").  (See id. at 2, 5.)  He alleges that his Fourteenth Amendment rights were violated when: (1) he was housed in administrative segregation for approximately three weeks and deprived of privileges; (2) he was housed with non-sex offender criminal detainees, and (3) he was removed from the secure housing of administrative segregation without a requisite court order that waived his secure housing placement.  (See id. at 3-5.)

More specifically, plaintiff alleges that his housing conditions, which were more restrictive than those in other protective custody and general population units, violated the law.  (See id. at 3-4.)  He alleges that while in administrative segregation, he received one hour per day out of his cell to use the phone, shower, and enjoy the dayroom (id. at 3), and while in protective custody, he received less dayroom time than people held in other protective custody and general population units (id. at 4).  He further contends that his placement with inmates who had been "in custody under the criminal process" as well as with "non-sex offenders" put his life "at risk of serious harm" and violated the law as the placements were done for no legitimate, lawful purpose and therefore, were unlawfully punitive.  (See generally id. at 4-6.)  According to plaintiff, these

1    were official policies, customs, and practices of defendant Placer County, and they caused him

2    harm in violation of his Fourteenth Amendment rights.  (See id. at 2-3.)

3        Plaintiff requests damages in the amount of $100,000.00 as well as any other damages

4    and/or injunctions the court deems appropriate.  (See generally id. at 7.)

## CROSS MOTIONS FOR SUMMARY JUDGMENT

**I.    Parties' Cross Motions for Summary Judgment**

### A. Filings Related to Defendant's Motion for Summary Judgment

#### i.  Defendant's Motion

9        In defendant's motion for summary judgment, the County first argues that plaintiff's claim

10   is barred by the statute of limitations.  (ECF No. 52-1 at 4.)  According to defendant, because the

11   alleged injury occurred from "about May 19, 2017, until April 20, 2018" (id.), plaintiff had two

12   years from the last date of the alleged injury to file his complaint: until April 20, 2020 (id.).  See

13   Cal. Code Civ. Proc. § 335.1.  The court docketed the complaint on November 6, 2020.[3]  (ECF

14   No. 52-1 at 4; ECF No. 1.)  Second, defendant argues that plaintiff's due process rights were not

15   violated because he was being housed as a <u>criminal</u> pretrial detainee (not a civil detainee, as

16   plaintiff alleges) based on a "'fresh felony charge' under California Penal Code § 311.11(b)" and

17   plaintiff's housing assignment while in jail was not based on an intent to punish plaintiff.  (ECF

18   No. 52-1 at 5-6.)  Finally, defendant argues that even if plaintiff can show a Fourteenth

19   Amendment violation, he cannot establish Placer County's liability under <u>Monell</u> principles.  (Id.

20   at 7.)

#### ii.  Plaintiff's Opposition

22       Plaintiff opposed the motion, arguing that extraordinary circumstances warrant equitable

23   tolling of the statute of limitations (ECF No. 61 at 5), and that "the case controlling [p]laintiff's

24   detention was his civil" case (id. at 6).  Plaintiff also alleged that defendant was not prejudiced by

---

[3]  Plaintiff's complaint was signed on November 2, 2020.  Under the prison mailbox rule, a
document is deemed served or filed on the date a prisoner signs the document and gives it to
prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the
prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the
mailbox rule to both state and federal filings by incarcerated inmates).  However, the limitations
question in this case does not turn on the application of the prison mailbox rule.

1    the delay and that defendant should have raised its statute of limitations claim in its motion to

2    dismiss.  (<u>Id.</u> at 5.)  Plaintiff objected to much of defendant's evidence.  (ECF No. 61 at 14-16.)

3           Defendant filed a reply.  (ECF No. 62.)

4          **B.  Filings Related to Plaintiff's Motion for Summary Judgment**

5             **i.  Plaintiff's Motion**

6           Plaintiff argues that he was improperly housed while in the South Placer County Jail

7    facility,[4] claiming that he was a civil detainee who should not have been housed with criminal

8    detainees.  (ECF No. 54-1 at 6.)  He also argues that while in administrative segregation, he was

9    only allowed outside of his cell for one hour a day and while in protective custody, he was

10    allowed three hours a day outside his cell.  (<u>Id.</u> at 5.)  He further argues that the County has a

11    pattern of not affording SVPs more considerate treatment than other detainees, and cites two

12    examples of other inmates.  (<u>Id.</u> at 7.)

13            **ii.  Defendant's Opposition**

14           Defendant opposed the motion, arguing that the declarations plaintiff offered as evidence

15    are inadmissible.  (ECF No. 56 at 5.)  Defendant also alleges that plaintiff's rights were not

16    violated because he was a criminal pretrial detainee and his confinement was not punitive.  (<u>Id.</u> at

17    7.)  Defendant claims it is not subject to <u>Monell</u> liability because plaintiff cannot show a specific

18    custom or policy behind his housing.  (<u>Id.</u> at 8.)  Defendant also includes multiple evidentiary

19    objections.  (ECF No. 56-2.)

20           Plaintiff filed a reply.  (ECF No. 59.)

21    *////*

22    *////*

23    *////*

24    *////*

25

26    [4]  Many of the record documents refer to the jail as "Placer County jail" (<u>see, e.g.</u>, ECF No. 52-4

27    at 41, 47), however the court notes that there are multiple jails in Placer County.  Plaintiff stated that he was held in the Auburn branch for two or three days, and then transferred to the Roseville

28    branch, which he refers to as the "South" Placer County Jail facility.  (<u>Id.</u> at 13 (Pl.'s Depo 24:23-25); ECF No. 54-1 at 5; ECF No. 61 at 11.)

1

**II.    Material Facts[5]**

2      The Roseville Police Department arrested plaintiff on May 19, 2017, for alleged violation

3   of California Penal Code section 311.11(b)—possession of child pornography—and booked him

4   into a Placer County jail.  (ECF No. 52-3 at 1-2, ¶¶ 1, 3-4.)  At the time of his arrest, plaintiff was

5   on a SVP conditional release from Coalinga Hospital, which began in 2014, and supervised by

6   Liberty Health.  (Id. at 1-2, ¶¶ 2-4.; ECF No. 52-4 at 11 (Pl.'s Depo. 7:1-12).)  Plaintiff had been

7   conditionally released after he completed inpatient treatments and petitioned the court.  (ECF No.

8   52-4 at 11 (Pl.'s Depo. 7:7-12).)  At the same time as plaintiff's new criminal charge, Liberty

9   Health filed a request to revoke plaintiff's conditional release, and the Placer County District

10   Attorney (the "DA") also filed for a review of plaintiff's conditional release status.  (ECF No. 61

11   at 21, ¶¶ 1, 2.)  Plaintiff's criminal charges and the revocation of his conditional release were both

12   based on his alleged violation of section 311.11(b), and judicial proceedings on both issues were

13   ongoing simultaneously.  (ECF No. 52-4 at 13 (Pl.'s Depo. 24:11-12); ECF No. 61 at 11.)

14      After booking, plaintiff's bail was set at $1 million.  (ECF No. 52-3 at 2, ¶ 5.)  On May

15   23, 2017, the DA filed a felony complaint against plaintiff for a violation of section 311.11(b).[6]

16   (Id., ¶ 6.)  On June 7, 2017, the DA filed an amended felony complaint also charging a violation

17   of section 311.11(b).  (Id., ¶ 7.)  On April 18, 2018, the Placer County Superior Court dismissed

18   the criminal case for the alleged violation of section 311.11(b) after a hearing.  (Id., ¶ 8.)  In the

19

20   [5]  In finding some facts to be undisputed despite plaintiff's assertion to the contrary, the court has reviewed and considered plaintiff's evidence to the extent it is relevant and appears to be

21   competent.  This includes plaintiff's statements in his declaration to the extent they are set forth under penalty of perjury and appear to be based on his personal knowledge.  However, a party's

22   mere claim that a matter is "disputed" does not suffice to dispute a fact that is supported by competent evidence.  See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir.

23   1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); Burch v. Regents of Univ. of California, 433

24   F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be

25   considered on a motion for summary judgment" (emphasis omitted)).

26   [6]  Defendants allege that during his confinement, plaintiff was detained based on criminal

27   charges, so he was not a civil detainee.  (ECF No. 52-1 at 5-6.)  Plaintiff does not dispute that he was detained on criminal charges, but argues that he was also a civil detainee and therefore

28   should have been treated as a civil detainee.  (ECF No. 61 at 4.)

1    SVP proceeding, the court found plaintiff had violated the terms of his conditional release and

2    revoked his conditional release.  (Id., ¶ 16.)  Plaintiff was transferred out of County custody on

3    April 20, 2018, to Coalinga State Hospital, where he is a civil detainee.  (Id. ¶ 18.)

4         While being booked into jail, plaintiff had completed a Placer County Sheriff's Office

5    Intake Questionnaire in which he indicated he needed protective custody.  (Id. at 2, ¶ 10.)

6    Plaintiff did not request a transfer out of protective custody.  (Id., ¶ 11.)  The jail initially housed

7    plaintiff in administrative segregation for about three weeks, during which time he was restricted

8    to his cell for twenty-three hours a day, seven days a week.  (ECF No. 61 at 11.)  During the one

9    hour a day outside of his cell, plaintiff was allowed to exercise in an indoor yard, shower, make

10   phone calls, and do other things.  (Id.)  After about three weeks, the jail transferred him to

11   protective custody, where he was allowed outside of his cell for three hours a day.  (Id. at 11-12.)

12   Defendant states that plaintiff's classification and housing assignments during his time in custody

13   were based on the Placer County Sheriff's Office's concern for the safety of all inmates and jail

14   staff, and the security and effective management of the jail.  (ECF No. 52-3 at 2-3, ¶ 12.)

15   Plaintiff denies this.  Defendant argues that plaintiff was treated equally to other criminal pretrial

16   detainees.  (Id. at 3, ¶ 15.)

17        On November 6, 2020, plaintiff filed the original complaint in the present action.  (Id.,

18   ¶ 19.)  On May 23, 2023, plaintiff filed the operative first amended complaint in the present

19   action.  (Id. at 4, ¶ 20.)

20                                **LEGAL STANDARDS**

21   **I.     Summary Judgment Standards Under Rule 56**

22        Summary judgment is appropriate when the moving party "shows that there is no genuine

23   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

24   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

25   issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing

26   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by

27   "citing to particular parts of materials in the record, including depositions, documents,

28   electronically stored information, affidavits or declarations, stipulations (including those made for

                                        6

1  purposes of the motion only), admissions, interrogatory answers, or other materials" or by

2  showing that such materials "do not establish the . . . presence of a genuine dispute, or that the

3  adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

4  56(c)(1)(A), (B).  To meet its initial burden, "the moving party need only prove that there is an

5  absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387

6  (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary

7  judgment should be entered, after adequate time for discovery and upon motion, against a party

8  who fails to make a showing sufficient to establish the existence of an element essential to that

9  party's case.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an

10  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

11  Id.

12       By contrast,

13       "When the party moving for summary judgment would bear the
         burden of proof at trial, it must come forward with evidence which
14       would entitle it to a directed verdict if the evidence went
         uncontroverted at trial.  In such a case, the moving party has the
15       initial burden of establishing the absence of a genuine issue of fact
         on each issue material to its case."
16

17  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp.

18  Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

19       If the moving party meets its initial burden, the burden then shifts to the opposing party to

20  establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec.

21  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

22  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

23  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

24  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

25  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

26  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

27  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

28  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).[7]

## II.   Statute of Limitations

For actions under 42 U.S.C. § 1983, this court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002). "California's statute of limitations for personal injury claims is two years." Butler v.

////

---

[7] On January 26, 2024, defendants advised plaintiff of the requirements for opposing a motion for summary judgment. ECF No. 52-5; see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1   Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014); see Cal. Civ. Proc. Code

2   § 335.1.

3          This limitations period is statutorily tolled for a person who is, "at the time the cause of

4   action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal

5   court for a term less than for life," and "the time of that disability is not a part of the time limited

6   for the commencement of the action, not to exceed two years."  Cal. Civ. Proc. Code § 352.1(a);

7   see Johnson v. State of Cal., 207 F.3d 650, 654 (9th Cir. 2000).  Thus, a prisoner serving a term

8   less than life in California may have four years to file a federal § 1983 claim.  See Cato v. Darst,

9   No. 2:17-cv-1873 TLN EFB P, 2019 WL 2249636, at *2 (E.D. Cal. May 23, 2019).  However,

10  this statutory tolling provision does not apply to civil detainees' claims.  Cal. Civ. Proc. Code

11  § 352.1; see Jones, 393 F.3d at 927.

12         Therefore, the only tolling potentially available to a civil detainee is equitable tolling.  See

13  Jones, 393 F.3d at 928.  "[A] continuously confined civil detainee who has pursued his claim in

14  good faith" may take advantage of equitable tolling.  Id. at 930.  While it is the defendant's

15  burden to prove that plaintiff filed his claims after the expiration of the statute of limitations, it is

16  the plaintiff's burden to show he is entitled to equitable tolling.  Payan v. Aramark Management

17  Servs. Ltd. Partnership, 495 F.3d 1119, 1122 (9th Cir. 2007) (statute of limitations); United States

18  v. Marolf, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999) (equitable tolling).

19         "Equitable tolling under California law operates independently of the literal wording of

20  the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure

21  fundamental practicality and fairness."  Jones, 393 F.3d at 928 (citing Lantzy v. Centex Homes,

22  31 Cal.4th 363 (2003)) (cleaned up).  "The purpose of California's equitable tolling doctrine 'is to

23  soften the harsh impact of technical rules which might otherwise prevent a good faith litigant

24  from having a day in court.'"  Id. (citing Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d

25  1131, 1137 (9th Cir. 2001) (en banc)).

26         Courts note the similar circumstances faced by civil and criminal detainees when it comes

27  to equitable tolling.  Tolling for criminal inmates serves the purpose of recognizing their limited

28  ability to investigate their claims and that "continuous custody is the relevant disability."  Elliott

9

1    v. City of Union City, 25 F.3d 800, 803 (9th Cir. 1994).  "The rationale behind the 'actual,

2    uninterrupted incarceration' rule applies with equal force to the case of an individual continuously

3    detained under civil process."  Jones, 393 F.3d at 928.

4           "Under California law, a plaintiff must meet three conditions to equitably toll a statute of

5    limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be

6    prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct

7    must have been reasonable and in good faith."  Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999)

8    (citation omitted); see also Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003) ("This court has

9    applied equitable tolling in carefully considered situations to prevent the unjust technical

10   forfeiture of causes of action, where the defendant would suffer no prejudice.").

11   **III.    Fourteenth Amendment Due Process Rights of Pretrial Detainees**

12          "[P]retrial detainees . . . possess greater constitutional rights than prisoners," Stone v. City

13   and County of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992), and are entitled to

14   treatment more considerate than that afforded individuals who have been convicted of a crime,

15   Jones, 393 F.3d at 931-32.  Constitutional claims of a pretrial detainee "arise[] from the due

16   process clause of the [F]ourteenth [A]mendment and not from the [E]ighth [A]mendment

17   prohibition against cruel and unusual punishment."  Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.

18   1986) (citing Bell v. Wolfish, 441 U.S. 520, 573 n.16 (1979)), overruled on other grounds by

19   Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014).  "[T]he more protective [F]ourteenth

20   [A]mendment standard applies to conditions of confinement when detainees . . . have not been

21   convicted" of a crime.  Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987).

22          The Fourteenth Amendment requires the government to do more than provide minimal

23   necessities to non-convicted detainees.  Jones, 393 F.3d at 931.  Under the Due Process Clause,

24   pretrial detainees have a right to be free from jail conditions or restrictions that "amount to

25   punishment."  Bell, 441 U.S. at 535-37; see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205

26   (9th Cir. 2008).  "This standard differs significantly from the standard relevant to convicted

27   prisoners, who may be subject to punishment so long as it does not violate the Eighth

28   Amendment's bar against cruel and unusual punishment."  Pierce, 526 F.3d at 1205.

1      The proscription against punishment before trial can be violated in multiple ways.  Most

2 obviously, it can be violated if restrictions are "imposed for the purpose of punishment."  Bell,

3 441 U.S. at 538; see also Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (quoting Bell, 441

4 U.S. at 538) ("'[P]unishment' can consist of actions taken with an 'expressed intent to punish.'").

5 If a jailer lacks express intent to punish, "a pretrial detainee can nevertheless prevail by showing

6 that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or

7 that the actions 'appear excessive in relation to that purpose.'"  Id. (quoting Bell, 441 U.S. at

8 561).

9      To "constitute punishment, the harm or disability caused by the government's action must

10 either significantly exceed, or be independent of, the inherent discomforts of confinement."

11 Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004).  "Absent evidence of express punitive

12 intent, it may be possible to infer a given restriction's punitive status 'from the nature of the

13 restriction.'"  Pierce, 526 F.3d at 1205 (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th

14 Cir. 2002)).  There is no constitutional infringement, however, if restrictions are "but an incident

15 of some other legitimate government purpose."  Bell, 441 U.S. at 538.[8]

16 **IV.**    **Monell Liability**

17      Under Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658 (1978), "[a]

18 government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or

19 custom of the entity can be shown to be a moving force behind a violation of constitutional

20 rights."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell, 436 U.S.

21 at 694).  "[A] policy is 'a deliberate choice to follow a course of action . . . made from among

22 various alternatives by the official or officials responsible for establishing final policy with

23 respect to the subject matter in question.'"  Oviatt By and Through Waugh v. Pearce, 954 F.2d

24 1470, 1477 (9th Cir. 1992) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

25    [8] As explained below, the court finds that plaintiff was in pretrial criminal custody during the

26 relevant period.  However, the due process standards applicable to pretrial criminal detainees and civil detainees are similar.  Neither group may be subjected to punitive conditions.  "[A]n

27 individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to

28 an individual accused but not convicted of a crime."  Jones, 393 F.3d at 932 (citations omitted).

1    "A 'custom' for purposes of municipal liability is a 'widespread practice that, although not

2    authorized by written law or express municipal policy, is so permanent and well-settled as to

3    constitute a custom or usage with the force of law.'"  Young v. City of Visalia, 687 F. Supp. 2d

4    1141, 1147 (E.D. Cal. 2009) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

5    "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be

6    founded upon practices of sufficient duration, frequency and consistency that the conduct has

7    become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

8    1996).  After establishing one of the methods of liability, "a plaintiff must also show that the

9    circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional

10   deprivation."  Id.

11                                        **ANALYSIS**

12   **I.    Plaintiff's Status as a Criminal Pretrial Detainee**

13           The parties dispute whether plaintiff should be treated as a criminal pretrial detainee or a

14   civil pretrial detainee during his confinement in the South Placer County Jail.  Both parties agree

15   that plaintiff was concurrently a civil detainee under the SVPA and a criminal detainee because of

16   a new criminal charge under California Penal Code section 311.11(b).  (See ECF No. 52-1 at 5-6;

17   ECF No. 61 at 4.)  Plaintiff alleges that his status as a civil detainee supersedes his status under

18   the criminal charge.  (ECF No. 61 at 4, 6.)  Defendant disagrees and argues that because plaintiff

19   was arrested on a "fresh" criminal charge and held in jail from about May 19, 2017 until the

20   criminal charge was dismissed on April 18, 2018, plaintiff was considered a criminal pretrial

21   detainee.  (ECF No. 52-1 at 6.)

22           There is little case law on which status should govern the legal analysis in a situation like

23   this.  However, the evidence shows that plaintiff's detention was primarily dictated by his new

24   criminal case.  (See ECF No. 52-4 at 41-49.)  Plaintiff was arrested and booked on May 19, 2017,

25   with criminal bail set at $1 million, under section 311.11(b).  (Id.)  The criminal charges against

26   plaintiff were not dismissed until April 18, 2018, shortly before he was transferred to Coalinga

27   State Hospital for purely civil detention.  (ECF No. 52-4 at 67, 70-72; ECF No. 52-4 at 13-15

28   (Pl.'s Depo. 24:21-25:6, 27:2-7)).  Based on the undisputed facts, it is clear that plaintiff was

1    arrested and held as a pretrial detainee for a new criminal charge, independent of his SVP status.

2    Therefore, the court will analyze whether plaintiff's treatment as a criminal pretrial detainee

3    while held in South Placer County Jail violated his Fourteenth Amendment rights.  See Batten v.

4    Shasta County Jail, No. CIV-08-2511 LKK EFB P, 2011 WL 3875706, at *8 (E.D. Cal. Sept. 1,

5    2011) (finding that "even if plaintiff was searched in a manner identical to, similar to, or more

6    restrictive than other criminally sentenced inmates, such a condition of confinement would not be

7    'presumptively punitive'" because plaintiff was concurrently a civil detainee, a convicted

8    criminal detainee, and pretrial criminal detainee (citation omitted)).

9    **II.    Evidentiary Issues**

10          Both plaintiff and defendant make evidentiary objections, which the court carefully

11   reviewed.  It is not the practice of this court to rule on evidentiary matters individually in the

12   context of summary judgment.  This is particularly true when "many of the objections are

13   boilerplate recitations of evidentiary principles or blanket objections without analysis applied to

14   specific items of evidence."  See Capital Records, LLC v. BlueBeat, Inc., 765 F.Supp.2d 1198,

15   1200 n.1 (C.D. Cal. 2010) (quoting Doe v. Starbucks, Inc., 2009 WL 5183773, at *1 (C.D. Cal.

16   Dec. 18, 2009)).  To the extent the court necessarily relied on evidence that has been objected to,

17   the court relied only on evidence it considered to be admissible.  Therefore, the objections to that

18   evidence relied upon are overruled.

19   **III.    Request for Judicial Notice**

20          The court grants defendant's request for judicial notice of the records of the Placer County

21   Superior Court in criminal case number 62-152538 and civil case number S-CV-0037867.  ECF

22   No. 52-2; see Fed. R. Evid. 201; Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746

23   n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public

24   record."); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  The court also

25   grants plaintiff's request for judicial notice of records of the California Court of Appeal in

26   appellate case number C087205 and records of Placer County Superior Court case number S-CV-

27   0037867.  (ECF No. 61 at 17-19.)

28          Defendant also requests judicial notice of documents filed in the district court in this case,

1 including plaintiff's complaint (ECF No. 1), plaintiff's FAC (ECF No. 39), the court's order

2 modifying the discovery and scheduling order (ECF No. 44), and the court's order denying

3 plaintiff's motion to compel and request for sanctions (ECF No. 48).  A court need not take

4 judicial notice of prior filings in its own case.  See Larios v. Lunardi, 442 F. Supp. 3d 1299, 1304

5 (E.D. Cal. 2020); Hardesty v. Sacramento Metropolitan Air Quality Management Dist., 935 F.

6 Supp. 2d 968, 978 (E.D. Cal. 2013).  Those filings are already part of the record in this case.

7 Therefore, defendant's request for judicial notice regarding these documents is denied.

8 **IV.     Defendant's Statute of Limitations Claim was not Waived**

9 Plaintiff argues in his opposition to defendant's motion to for summary judgment that

10 defendant should have raised its statute of limitations claim in its motion to dismiss.  (ECF No. 61

11 at 5.)  Statute of limitations is an affirmative defense that is waived if it is not raised in the first

12 responsive pleading.  See Randle v. Crawford, 604 F.3d 1047, 1052 (9th Cir. 2010) (citing

13 Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005)).  A responsive pleading is "a

14 complaint and answer; a reply to a counterclaim; an answer to a cross-claim; and a third party

15 complaint and answer."  Morrison, 399 F.3d at 1046.  The requirement to raise affirmative

16 defenses does not apply to motions or other papers.  Id.  A motion to dismiss is not a pleading.

17 See Fed. R. Civ. P. 7(a) (designating "pleadings"); Miles v. Department of Army, 881 F.2d 777,

18 781 (9th Cir.1989) ("[A] motion to dismiss the complaint is not a responsive pleading.").

19 Here, defendants raised statute of limitations as an affirmative defense in their answers to

20 the original complaint and the first amended complaint.  (ECF Nos. 32, 40.)  Defendants were not

21 required to raise this affirmative defense in their motion to dismiss.

22 Therefore, defendants have not waived the statute of limitations defense.

23 **V.     Equitable Tolling Makes Plaintiff's Claim Timely**

24 Defendant argues that plaintiff's claim is barred by the two-year statute of limitations.  A

25 statute of limitations begins to run on the date the claim accrues.  "Although state law determines

26 the length of the limitations period, 'federal law determines when a civil rights claim accrues.'"

27 Azer, 306 F.3d at 936 (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir.

28 2000)).  "Under federal law, a claim accrues when the plaintiff knows or has reason to know of

14

1    the injury which is the basis of the action."  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.

2    1999).

3         Plaintiff alleges that he was subjected to unlawful conduct for the whole of his

4    incarceration in the jail.  Under the continuing violations doctrine, "a plaintiff who shows that a

5    policy and practice operated at least in part within the limitations period satisfies the filing

6    requirements" even if "some or all of the events evidencing its inception occurred prior to the

7    limitations period."  Green v. Los Angeles Cnty. Superintendent of Schools, 883 F.2d 1472, 1480

8    (9th Cir. 1989) (citation omitted).  For continuing violations, the statute of limitations does not

9    begin to run until that conduct ends.  Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002).

10   The continuing violations doctrine is applicable here because plaintiff alleges that he was

11   continuously subject to the allegedly unconstitutional policies from May 19, 2017 until April 20,

12   2018.  Therefore, the statute of limitations began to run on April 20, 2018.

13        Plaintiff did not initiate this action until November 6, 2020, outside the two-year

14   limitations period that would have run in April 2020.  However, while the issue is a close one, the

15   court finds that equitable tolling applies and renders this action timely.[9]

16        Plaintiff argues he is entitled to equitable tolling because the COVID-19 pandemic

17   resulted in quarantining, thus preventing him access to legal resources, and because he only filed

18   the claim about six months late, showing that he was diligent.  (ECF No. 61 at 5, 12.)  Plaintiff

19   also properly notes that defendant makes no assertion of prejudice.  (Id. at 5.)

20        The purpose of equitable tolling is to "ensure fundamental practicality and fairness" and

21   "prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no

22   prejudice."  Jones, 393 F.3d at 928 (citations omitted).  Some courts have found that restrictions

23   _____

24   [9]  Equitable tolling is the only tolling doctrine that applies in this situation.  The statutory tolling
     provision of California Code of Civil Procedure section 352.1 is of no help to plaintiff.  That
25   provision likely applies to pretrial criminal detainees.  See Mosteiro v. Simmons, No. 22-16780,
     2023 WL 5695998 (9th Cir. Sept. 5, 2023) (unpublished); see also Prescott v. Contra Costa
26   County, No. 24-cv-01660 HSG, 2024 WL 3090489, at *5-6 (N.D. Cal. June 21, 2024).  However,
     on April 20, 2018 authorities transferred plaintiff to Coalinga Hospital as a civil detainee.  Section
27   352.1 does not apply to civil detainees.  See Jones, 393 F.3d at 927.  Plaintiff is not entitled to
     statutory tolling under section 352.1 because at the time the statute of limitations began to run, he
28   was no longer in jail and was solely a civil detainee.

related to COVID-19 warrant some limited period of equitable tolling.  See, e.g., Homes v. Baughman, No. 2:20-cv-1496, 2022 WL 298773, at *2 (E.D. Cal. Feb. 1, 2022) (finding that shutdowns that prevented library access due to COVID might be a basis for equitable tolling, but plaintiff would need to show why this impacted his claim); see also Carter v. United States, No. C20-1654 MJP, 2021 WL 1978697, at *4 (W.D. Wash. May 18, 2021) (finding that circumstances presented by COVID-19 restrictions prevented petitioner from filing petition one month earlier in habeas corpus case); McWhorter v. Davis, No. 1:20-cv-0215 NONE, 2021 WL 5639209, at *4 (E.D. Cal. Dec. 1, 2021) (finding that equitable tolling was warranted because the "petitioner has demonstrated that notwithstanding counsel's ongoing reasonable diligence, exceptional circumstances raised by the ongoing COVID-19 pandemic continue to impede the investigation, development, and presentation of a complete federal habeas petition").  Another case, found that California Emergency Rule 9, which automatically tolled the statute of limitations for civil cases because of COVID-19, applied to § 1983 cases.  See Pumphrey v. Battles, No. 21-cv-09005 JSC, 2023 WL 1769185 (N.D. Cal. Feb. 3, 2023).  The court starts from the premise in these cases: that the onset of COVID-19 was an exceptional circumstance that impacted many individuals trying to bring their claims in court.  Plaintiff has asserted just such an impact on his case, claiming that COVID-19 restrictions prevented him from accessing legal resources while hospitalized.  Plaintiff's delay in filing his complaint is accordingly reasonable and in good faith, warranting limited tolling between mid-April 2020 and November 2020.[10]

Therefore, plaintiff's claim is not time barred by the statute of limitations.

**VI.    Fourteenth Amendment Due Process**

Defendant argues in its motion for summary judgment that plaintiff, a criminal pretrial detainee, was not confined in a way that amounted punishment in violation of his Fourteenth Amendment rights.  (ECF No. 52-1 at 5-7.)  Plaintiff in turn alleges that while he was in custody, he was concurrently a civil detainee under the SVPA, and he therefore should have been confined

---

[10]  Defendant does not argue that it is prejudiced in having to defend this case several months after it would otherwise have been due.  Nor has defendant argued that it did not have timely notice of plaintiff's claim.

1     in a way that was more considerate that criminal detainees.  (ECF No. 61 at 4.)  As stated above,

2     plaintiff's detention in South Placer County Jail was primarily due to the criminal charge against

3     him.  For the purposes of his Fourteenth Amendment claim, plaintiff is considered a pretrial

4     criminal detainee.  The court must now determine whether plaintiff was held in a way that

5     amounted to punishment in violation of the Fourteenth Amendment. Bell, 441 U.S. at 535-37.

6     Even if plaintiff's restrictive housing served a legitimate governmental purpose, it amounted to

7     unconstitutional punishment if the restrictions were excessive in relation to that purpose. See

8     Kingsley, 576 U.S. at 398.

9         Here, plaintiff avers that he was housed in administrative segregation for approximately

10    three weeks, and while housed there he was housed with a "non-sex offender criminal detainee"

11    and he only had one hour a day outside of his cell.  (ECF No. 1 at 4-5.)  Plaintiff also claims that

12    he was moved into protective custody and housed there for the remainder of his time in detention

13    with criminal inmates and that he received three hours a day of dayroom time, which was less

14    than people housed in other protective custody units and general population units.  (Id. at 5-6.)

15    Defendant does not dispute this, but alleges that plaintiff's housing assignment was based on

16    concerns about safety of other inmates and jail staff and that plaintiff was housed the same way as

17    other criminal pretrial detainees, by his own admission.  (ECF No. 52-1 at 5-6; ECF No. 52-3

18    at 3.)

19         As a pretrial detainee, plaintiff is still entitled to detention that does not amount to

20    punishment.  Plaintiff's main complaint with his housing focuses on the fact that he considers

21    himself a civil detainee, and that he was housed with criminal pretrial detainees.  However, since

22    the court determined plaintiff was a criminal pretrial detainee, the court's analysis focuses on

23    whether plaintiff's housing amounted to punishment, i.e., whether housing plaintiff in

24    administrative segregation for three weeks with only one hour a day outside of his cell or housing

25    plaintiff in protective custody for close to a year with only three hours a day outside of his cell

26    amounted to punishment.

27         Plaintiff's restrictive confinement sounds most clearly in the case law concerning out-of-

28    cell recreation.  "[T]he Fourteenth Amendment requires that pre-trial detainees not be denied

adequate opportunities for exercise without legitimate governmental objective."  Pierce, 526 F.3d at 1211-12 (citing Bell, 441 U.S. at 538).  Pretrial detainees are required to have some form of outdoor or otherwise meaningful recreation.  Shorter v. Baca, 895 F.3d 1176, 1185-86 (9th Cir. 2018).  The Ninth Circuit has determined that while there is not a specific minimum amount of weekly exercise that must be afforded to detainees, thirteen minutes a day for an indefinite period of time is unconstitutional.  Pierce, 526 F.3d at 1212; see also Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (finding under Eighth Amendment's "cruel and unusual punishment" standard that state prisoners assigned to restrictive unit for a period of years had the "right of outdoor exercise one hour per day, five days a week unless inclement weather, unusual circumstances, or disciplinary needs made that impossible"); Allen v. Sakai, 48 F.3d 1082, 1087-88 (9th Cir. 1994) (holding forty-five minutes of outdoor recreation once a week for six weeks to be unconstitutional); Toussaint v. Yockey, 722 F.2d 1490, 1492-93 (9th Cir. 1984) (holding that denying inmates who had been in administrative segregation for over one year outdoor exercise raised constitutional concerns); but see LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993) (holding there was no constitutional violation where plaintiff's outdoor exercise privileges were removed when plaintiff abused those privileges and he represented a security risk).

Detainees who are held for more than a "short time" should have five to seven hours of exercise per week outside of their cells.  Pierce, 526 F.3d at 1212; see also Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) (holding that four weeks was a short time).  Here, plaintiff states that for three weeks he had one hour a day outside of his cell, or seven hours a week.  While plaintiff alleges that this hour was not just for exercise, he was only in administrative segregation for three weeks, which is considered a short period of time in relative terms.  Additionally, plaintiff was then housed in protective custody for close to a year and had three hours a day outside of his cell.  While plaintiff was held in protective custody for more than a short time, he had twenty-one hours a week outside of his cell, which far exceeds the minimum requirement of five to seven hours.

Plaintiff has also alleged that his exercise time while in administrative segregation was "not outside."  (ECF No. 61 at 11.)  It is unclear whether he had access to outside exercise time

while in protective custody.  (See id. at 12.)  The Ninth Circuit has found that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."  Spain, 600 F.2d at 199.  However, "each condition of confinement does not exist in isolation; the court must consider the effect of each condition in the context of the prison environment, especially when the ill-effects of particular conditions are exacerbated by other related conditions."  Wright v. Rushen, 642 F.2d 1129, 1133 (9th Cir. 1981).  The Ninth Circuit has found that depriving inmates of outdoor exercise who were confined to their cells for 23 and a half hours a day for over a year raised constitutional concerns.  Toussaint, 772 F.2d at 1492-93. Here, plaintiff was allowed out of his cell for three hours a day while in protective custody. Based on the facts alleged, plaintiff has not shown that he was denied outdoor exercise in a manner amounting to a constitutional violation.

Further, defendants argue that plaintiff at all times was housed based on safety concerns for plaintiff, other inmates, and prison officers.  (ECF No. 52-3 at 2-3.)  Prison safety is a legitimate penological concern.  See Jones, 393 F.3d at 932 ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.")  Plaintiff also indicated that he had a reason to need protective custody for his own safety and security because he is an SVP.  (ECF No. 52-3 at 2.)  Plaintiff himself admitted that he was treated the same as other criminal pretrial detainees in the jail.  (ECF No. 52-4 at 17 (Pl.'s Depo. 52:11-18)).  Based on the undisputed facts, defendant has met its burden to show that plaintiff was housed in administrative segregation and protective custody for the legitimate penological purpose of safety, and that having at minimum one hour a day outside of his cell a day for three weeks and three hours a day outside his cell for the remainder of his time in custody was not punishment within the meaning of the Fourteenth Amendment.  Therefore, defendant's motion for summary judgment should be granted.

Plaintiff's motion for summary judgment essentially presents the same argument as his opposition.  Plaintiff argues that he was a civil detainee and therefore housing him in administrative segregation and protective custody with other noncivil detainees was a violation of his Fourteenth Amendment rights.  (ECF No. 54-1 at 5-7.)

As stated above, plaintiff was a criminal pretrial detainee during his detention and undisputed facts demonstrate that the way he was housed did not violate his Fourteenth Amendment rights.[11]  Therefore, plaintiff's motion for summary judgment should be denied.

**VII.    Monell Liability**

Having concluded that defendant's motion for summary judgment should be granted as to plaintiff's due process claim, it is not strictly necessary to address Monell liability.  To succeed on a Monell claim plaintiff must first show that he suffered an individualized constitutional injury.  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403-05 (1997) (Monell plaintiffs must prove a constitutional injury).  The court nonetheless addresses Monell as an alternative reason to grant defendant summary judgment.

Defendant argues that plaintiff cannot identify a specific County custom, practice, or policy that is the moving force behind his alleged constitutional violation.  (ECF No. 52-1 at 8.) Plaintiff cites statements from two alleged civil detainees about their housing situation to show that the County has a practice of housing civil detainees improperly.  (ECF No. 61 at 95-99.) However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Trevino, 99 F.3d at 918; see also J.M. by & Through Rodriguez v. Cnty. of Stanislaus, No. 1:18-cv-01034 LJO SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018) ("[O]ne or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality."); Meehan v. Cnty. of Los Angeles, 856 F.2d 102, 107 (9th Cir. 1988) (holding proof of two unconstitutional incidents does not support liability under Monell); Bradford v. City of Seattle, 557 F.Supp.2d 1189, 1203 (W.D. Wash. 2008) (granting summary judgment to defendant City of Seattle because "absent

---

[11]  Plaintiff claims his housing with "penal cellmates" violated state statutes requiring the separate housing of people detained under civil process and people detained under criminal process.  (See ECF No. 54-1 at 6 (quoting Cal. Pen. Code §§ 4001; 4002)). But plaintiff was himself detained under criminal process.  Moreover, § 1983 requires a plaintiff "to demonstrate a violation of federal law, not state law."  Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).

additional proof, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a 'pattern and practice' or 'policy and custom' claim under § 1983"). Further, the declarations plaintiff provides relate to housing alleged civil detainees.  The issue here is whether plaintiff, as a criminal pretrial detainee, was housed in a way that amounted to unconstitutional punishment.  Plaintiff has not shown that the County had a custom or practice of housing criminal pretrial detainees improperly.

Defendant's motion for summary judgment should be granted on this alternative ground.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 52) be granted and plaintiff's motion for summary judgment (ECF No. 54) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 17, 2024

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

21